Your Honor, I'd like to reserve five minutes for rebuttal. May it please the Court, Jordan Wells, ACLU of South Carolina, for the appellant. The government violates the First Amendment whenever it retaliates against a person for criticizing a public agency. Hours after college student Jose publicly criticized ICE, the agency revoked the bond on which an immigration judge had released and imprisoned him on an exorbitant $50,000 bond. For decades, this Court has applied the Mount Healthy framework to a wide range of First Amendment retaliation cases. The District Court's ICE's actions against Mr. Bello were, quote, highly suggestive of retaliatory intent. And under Mount Healthy, that should have shifted the burden on ICE to show that it would have taken the same actions against Mr. Bello even absent his protected speech criticizing the agency. ICE, however, made the tactical choice not to offer any evidence to meet that burden. Instead, it argued as long as it can point to some objective basis that could justify its action, the Court should not inquire into whether retaliation or unanimous was, in fact, the cause. This Court has repeatedly rejected the argument so, again, first, because binding precedent requires that result, and second, even if the Court were to do it on a clean slate, it would not make sense to extend the EMS to this distinct context. Unless the Court has questions at this point, I'll now turn to each of those two points. Well, before, we don't, the large question in this case is what's the impact of Neves? And can it or should it apply outside the 1983 context? So why don't you tell me what principle, what distinctions you draw from that and which best argument that it doesn't apply? Certainly, Your Honor. I think that, you know, the question is whether the background default framework of Mount Healthy should continue to govern in this context or whether Neves replaces Mount Healthy. And you might hear me say Neves because I've gotten used to saying it, whether Neves replaces Mount Healthy in a broader range of cases than the context it addressed. So I think because Neves addressed the elements of a tort claim for retaliatory arrest under 1983, which incorporates the common law immunities, protecting officers from tort liability, it doesn't apply in this case, in a habeas context, where, of course, it would be incoherent to even talk about common law immunities. In 1983, there are times when an officer commits a constitutional violation, including a First Amendment violation, but for reasons of policy or common law doctrine, there will be no recovery in tort. Obviously, we haven't brought a tort claim, we're bringing a habeas petition, and under that statute, which is from 1983, the courts are instructed to grant the rape. I have a question. Would you say the same if this was a criminal habeas? That is, is the distinction, I mean, there are very possible distinctions, and maybe it's a combination of them. But if you start with the 1983 action, then if you had a criminal habeas, which alleged an arrest, retaliatory arrest, would Neves apply or not? Your Honor, I think Mount Healthy would apply in that context. You'll notice that in Neves, there's no discussion of habeas claims. You won't see it in any of the briefings or in the course of the opinion. And in our case, the government has failed to cite any habeas case where a rule like Neves or the rule at Hartman applies. And our research has basically turned up a couple of immigration cases, like the Rockbier case that we cite as persuasive authority. And an important, I think, salient recent example, where Michael Cohen, you know, the President's former confidant, was about to publish his tell-all book in the New York Post-Reporting Act. And all of a sudden, the Bureau of Prisons revoked his home confinement. He had been released on home confinement due to COVID. Bureau of Prisons revoked his home confinement upon finding out that he was about to do a tell-all about President Trump. And what Judge Hellerstein did in that case is apply, I mean, there's not a lot of analysis, to be sure, because it was a fast decision, but the point is that the government did not raise the Neves case as a defense, and the court applied basically the default Mount Healthy framework. So there aren't that many- And that's interesting because that case has the other feature of this one, which is that the background requirement is not probable cause in that instance. It's fairly discretionary, and that's true here. I mean, that case is very close to this one, but not simply because it's a habeas. That's right. Or something like that. That's right, Your Honor. Which would suggest that the answer to my question could still be no, i.e., it would apply to an ordinary criminal habeas, but it wouldn't apply where the background standard is probable cause. But here, there is no background standard, essentially. You're right, and I guess I'm talking about, yeah, right, confinement pursuant to a criminal sentence, which is different than, I think, maybe you were talking about the initial arrest, putting someone in criminal pursuit, and that would be a closer case. But just to pick up on the point that Your Honor was adverting to, the, this context does not involve probable cause. That is not the standard. It involves the highly discretionary standard of whether to revoke bond, and the parties agree. I don't think my friend, Mr. Salone, will stand up and say that there's a standard of probable cause that applies to revocation of bond. It is highly discretionary, and so the problem with that is, the problem with this context is when discretion is as high as it is, it tells you very little about the causation for the enforcement action. In Nieves and in Hartman, the court is pointing to probable cause as a proxy for determining what drove the officer's action, and it basically says probable cause is a distinct body of evidence is going to tend to prove or disprove retaliatory animus. But here, of course, you can, under some objective basis, you can revoke bond, and it doesn't tell you anything about whether that is a pretext or not. And I think that you can see, even in Nieves, because the court is concerned about these situations where there's a lot of discretion, and that's why, for instance, they carved out the exception for offenses like jaywalking that are, not commonly used as a basis for arrest and said, because that's so discretionary, probable cause in those circumstances really doesn't tell you what motivated the officer or not, and it may indeed be retaliatory animus. We want to carve out those cases from this rule. I wanted to ask if there are any decisions in other circuits. Your Honor, the principal circuit decision is the Rugbeer decision. That court applied the Mount Healthy analysis, and I think notably, the government after Nieves sought rehearing from the Second Circuit and made the same argument it's making in this case, that the removal order from the Rugbeer was an objectively reasonable date for its actions. But the Second Circuit rejected the rehearing petition because the analogy to Nieves just doesn't work in this context. And even more notably, perhaps... Did they write an opinion on that or did they just deny? I don't think there was an opinion on the denial of rehearing. There was a briefing where the government made this very argument, and then there's pages and pages of argument on this point in the OSG's circuit petition seeking vacature and remand, and notably, the court did not cite Nieves in remanding the case. It cited only the jurisdictional opinion that the OSG made. I think that is also evidence of where the Supreme Court is at on this question. But it's also true... I don't know if it's a very good indication of where the Supreme Court is at because the one thing, they could have thought that they didn't raise the issue properly in the court. They probably didn't. But that case was about instituting deportation proceedings, right? Right. The effectuation of a removal. All right. So it, again, does have a background standard that this one doesn't really. It does. It does. For jurisdictional purposes, it certainly does. I want to make clear the stakes here because there are over 2 million people out on ICE bond for virtually any minor reason. It can use the pretext, and it could use that as a tool to silence dissent among people who are... That is effectively what they've done here, and they could do it again and again, and they could do it expressly in order to retaliate for speech unless this court applies the Mount Healthy framework. That really is the core of our argument and why we prevail in this case. You're down to about 4 minutes, 30 seconds. Do you want to reserve? Thank you, Your Honor. Yeah. What I want to speak about on rebuttal is the proper application of the Mount Healthy, which I didn't get in any of the questions Your Honors have. Thank you. All right. Mr. Salone. Thank you, Your Honors. May it please the Court. Michael Salone on behalf of the United States of America. This Court should holding that Mr. Veo's First Amendment retaliation claim failed as a matter of law. The District Court correctly held to make out such a claim, the petitioner must establish that there is no probable cause for his arrest. That is correct for two mutually reinforcing reasons. First... But wait a minute. This was not... I did not understand this to be about the arrest. I understood it to be about the replication of the bond and the increase in the amount of the bond. So that's part and parcel to... I mean, he was arrested. He was arrested some time ago. He was let out on bond. Now that bond was revoked, that resulted in him being put back in detention. But it wasn't the arrest that was based on probable cause. This arrest by your own or this detention by your own statement was a completely discretionary one. Was it not? It was, Your Honor. That's correct. But as... So again, I don't know how you get to go back to the original basis. And I understand your argument. And I understand that there was an interrogating DUI, although it was a while before the revocation. But suppose there hadn't been. My understanding is that your position is they could still have done exactly the same thing without the DUI, and you'd still be taking the same position. The DUI... Is that right? To be clear, Your Honor, the issue that triggered his re-arrest and the revocation of his bond is the fact that he violated the terms of his order of supervision. He violated the terms... Yes, but your background position is that you can revoke the bond whenever you want to. It's a matter of complete discretion. If that's true, then we would still be in the same place with this Neves argument, I think, or at least I'd like to know why not, if there hadn't been a violation or a DUI. Is that not true? So yes, correct, Your Honor. The government does have that sole discretion and that ability, as you pointed out in the last case under De La Mota, this court has held that... So the fact that he had the DUI and that he violated, which the district court put a lot of emphasis on as a reason for the revocation, is sort of no nevermind here, because you're saying it doesn't matter. There doesn't have to be a reason for the revocation. But to be clear, the revocation occurred because of the fact that Mr. Deo violated the terms of his order of supervision, and that's clear in the warrant of arrest that's in the... I understand, but what is the pertinence of it to your Neves argument? Because it isn't anything required by, as you read the statute and the regulations, so it doesn't provide, unlike the probable cause in the criminal context, any alternative and presumptively valid standard. It doesn't matter whether, according to your reading of the statute, whether there was a reason or there wasn't a reason. But the Neves applies here because it reinforces the long-standing deference that the Supreme Court has consistently given to the law enforcement function, and that function is the core to the because such law enforcement decision-making is ill-suited to judicial review. And second, the Neves applies here because it applies a rule that provides an important objective screen and check against claims of retaliatory arrest that the Supreme Court has recognized are easy to allege and hard to disprove. That objective screen guards against the chilling effect that would otherwise routinely apply to law enforcement officials in the inquiry to their subjective motivations underlying. But in the criminal context, there is a screening standard, and that's probable cause. Here, and this is all aside from the 1983 habeas difference, here there is no screening which would serve to sort of switch the presumption, is there? So that's why we're trying to, we're saying that Neves applies because it needs to have an objective screen. The law enforcement context is what matters here, and in all First Amendment retaliation claims, the context is what matters. This court recognized that in Vance v. Barrett in giving deference to prison officials and saying that it would justify the departing from the Mount Healthy standard because the prison context is unique and that it's tough for judiciary to review those type of decision-making claims. Same applies here. I mean, providing, applying Mount Healthy here would be the very sort of subjective inquiry the Supreme Court cautioned against as a concern in the law enforcement context. And as Neves recognized, quoting Waite, the officer's state of mind is simply irrelevant and provides no basis for invalidating an arrest. Here, there's no claim that, aside from the temporal nature of the, I was reading of a poem on May 13th and the fact that he was re-arrested and his bond was revoked two days later, that also ignores the fact that he failed to report to, or his sentence was suspended until May 13th in the Superior Court for his driving under the influence conviction. That is conveniently ignored by Tishner. That temporal nature doesn't turn on the nature of his speech, and that's underlined by the fact that Mr. Vail has engaged in speech for years. His own previous petition recognizes that. The government never exercised his discretion to revoke his bond in any prior occasion. It turned on the fact that he was convicted of driving under the influence a month before he was arrested and failed to report for his work order and his suspended sentence. Neves controls here because there are certain, there are special considerations that govern claims in the law enforcement context, and probable cause standard untangles that complex causation issue. But there is no probable cause, excuse me, there is no probable cause standard here. That's what I'm not understanding. There is, I mean, you're, where are you getting the probable cause standard from? As this court held in Tejeda Mata, Your Honor, it is that an immigration officer can arrest a person if the officer has reason to believe that the person to be arrested is an alien illegally in the United States, and this is the key part. This court held that that requirement is equated with the constitutional requirement of probable cause. I understand that, but that's not what's at issue here. He was arrested. He's not contesting his arrest. He's not contesting the proceeding. He's not contesting the fact that he's being charged with deportation, and that he's in for deportation proceedings. He's not contesting any of that. That's correct, Your Honor. And, but it goes to the fact that allowing this, applying Mount Healthy here would allow for an after the fact examination on the basis for the enforcement decisions in virtually every case involving protected speech. That effect would allow individuals here to use retaliation as a shield to insulate themselves from immigration arrests. That's, and the rationale is underpinning the ads directly apply here. The first amendment retaliation cases take account of the context in which they're raised, such as complex causation issues, presumption of regularity, and the evidentiary concerns. In the Supreme Court in Reno versus American Arab Anti-Discrimination Committee, that supports the no probable cause standard here. In Reno versus AADC, Justice Scalia's opinion about a reason that the particularly demanding standards for selective prosecution claims in the criminal context are greatly magnified. In this instance, there's no individual who is a defendant in effect had a bad motive. It doesn't have to be the person who actually detained him. It is the agency as a whole proven by, you know, after discovery, I think, understanding of why the decision was made to detain him and by whom, but it doesn't have to be any particular person. So the causation issue is quite different. Respectfully, Your Honor, the causation issue is quite complex and is analogous to the issues in Hartman and in Neos. Here, it's difficult to determine whether the adverse government action was caused by the officer's malice against the individual or the individual's specific unlawful conduct. And here, the government has put into the record and established that it order of release were individuals who commit to trial and under the influence, let alone the fact that they are convicted of such as an enforcement priority in which the government... And then you'll win. You'll win under the Mt. Healthy standard because you'll be able to demonstrate that you would have done this anyway. And so we agree, Your Honor, that even under Mt. Healthy, the petitioner still loses. But the danger in applying Mt. Healthy here is that it subjects the government to burdensome and unnecessary discovery. This opens up the door to questioning the motives of the agency. It looks into the investigatory priorities, certain... In general, the government's resources and things of that nature. And opening that door to the immigration enforcement context is analogous to the same concerns that the Hartman Court have in opening those same doors in the prosecutorial context. Do you think Mt. Healthy is still good law in the employment context, government employment, even high-level government employment? Yes, and that's... And the difference is... What's the difference? The difference is in the employment context. In terms of the causation issues or the burden of litigation issues or the motive to not be subject to discovery in someone, what are the differences? In the employment context and in the Mt. Healthy, it's a straightforward type of case, and it does not involve the same type of governmental priorities and the heightened discretion that a Supreme Court has long held and long applied. The employment context in Mt. Healthy does not involve the law enforcement function as core to the executive branch's operations. And the employment context... What about Mt. Healthy in a police force, which we get all the time? Excuse me, Your Honor? What about Mt. Healthy applied to a police officer, which we get all the time? So our reading of NIEVS is that the law enforcement... NIEVS controls retaliatory arrests, and that's clear because the Supreme Court specifically stated that it was resolving the circuit split as far as whether to apply Mt. Healthy or Hartman in the context of retaliatory arrest, and it unequivocally stated that it was applying the no probable cause standard in cases in which there is such complex causation and it specifically differentiated Mt. Healthy as being the type of case in which the causation is straightforward and establishing the causal connection between a defendant's animus and a plaintiff's injury is straightforward. That's not the case here, because the complex inquiry here is difficult to determine whether the government's action was caused by the officer's alleged retaliation or Mr. Beo's DUI conviction and his violation of his release on bond terms. And for that reason, the question of motivation speaks to the objective probable cause and the government's discretion to do so, which this court has upheld under Ketamata, speaks to the objective reasonableness of an arrest. And NIEVS specifically carves out a protection for not only balancing the important law enforcement function, but also protecting the First Amendment rights of individuals through its jaywalking exception. If an individual can show evidence that officers routinely exercise their discretion and similarly situated individuals who have not engaged in protected speech are not arrested, then that applies to the Mt. Healthy standard. Here, Petitioner has not done that. Petitioner has not shown and cannot show that there are similarly situated individuals who have not engaged or been convicted for DUI and violated the terms of their order of release who have not engaged in speech and not been arrested. I have a procedural question. The complaint clearly attempted to allege a patent or practice claim as well. What's happened to that? In other words, a Lozman type claim. What's happened to it? As far as our reading of that is that they were merely, it was not, they were not seeking to follow through on that. They were just pointing out that this is not, they were alleging that other individuals have been similarly positioned. That does not rise the level of objective evidence that those individuals were convicted of DUI while they were released on bond and that their bond was similarly revoked. Was that claim, was a separate claim of that kind ever litigated or did they just not try and litigate? They were not trying to litigate that issue, your honor. It was not a cause of action, your honor. You're a bit over your time. I just want to make sure everybody's got their questions in. Judge Schroeder? Okay, very good. We'll hear from you at the bottom. Thank you, your honor. I just want to cover a few of the items that just came up. First, the court has rejected this notion that an objective basis outside of the context of probable cause suffices to explain causation in first amendment retaliation cases. And it has even done that in the wake of Nieves. So I think the answer to Judge Schroeder is that the Mount Healthy Standard survives Nieves except for insofar as Nieves abrogates this law. And so in the context of retaliatory arrest, obviously those claims are much different after Nieves. But there is a body of law that applies across contexts that applies Mount Healthy that continues to survive. And I also want to point out that the Supreme Court has its own rejection of the government's argument in Crawford L, which we cite throughout the brief. There, a prisoner brought a retaliation claim where he said that a prison official had intentionally misdelivered his possessions. And the Supreme Court specifically rejected the idea that they would immunize officials whose conduct is, quote, you can't just invoke an objectively valid basis as a talisman to sort of cut off their inquiry in a first amendment case. And specifically in the context of prison, since that came up, this court has applied Mount Healthy. I've cited Rizzo v. Dawson, cited other prison cases. And I think that's significant because prison officials, of course, had a lot of discretion about, for instance, transfers of detainees and that sort of thing. And yet this court has applied Mount Healthy. So I just want to sort of put to bed the notion that Mount Healthy doesn't apply in the law enforcement context, that there's no support for that. Secondly, there was a colloquy about what justification ICE might have had for the timing of the arrest. And I want to underline that for some reason, the government made the decision to come forward with evidence showing the substantial or motivating factor was retaliatory animus. The district court credited our evidence on that and said that it was highly suggestive of retaliatory intent. On step two of Mount Healthy, the government came forward with zero, no evidence to explain the timing of his actions. So our view on the remand of this case is that there's not much left to do. On the first step, the district court has found for us. On the second step, properly applied, there's no evidence to rebut the inference of retaliation that the district court drew. And so the claim prevails under Mount Healthy. I also, because the AADC versus Reno case was invoked, I just want to briefly say, we have covered that. The court's quite a fun, long decision that just sews up that concern completely. And we discussed that at pages five and six of the reply brief. And then finally on Judge Borzon's question about the pattern of practice claim, the district court did not reach that. So if, you know, we believe that we prevail under Mount Healthy, but even if the Nieves decision somehow governs this case, we need a remand in order to press that claim, the Lozman exception claim on remand to the district court. Yeah, but you didn't appeal it either. I mean, that's why I was so mystified. In other words, you didn't suggest in your briefs that you have an alternative route to prevail here. It would be an alternative route, wouldn't it? We have that in a footnote. I think it's in a footnote in both the opening and reply briefs. There's not much to say because the district court just never reached it. And it was error not to reach that alternative basis. But for the reasons I've been discussing, I think, you know, Nieves controls this case. And I see that I'm running out of time, so I just want to wrap up if I can. Yes. Thank you. Thanks. Okay. So there are certain protections which, when diminished, imperil the fabric of our constitutional democracy, one of which is the right to criticize government without fear of retaliation. The government's position in this case boils down to a claim that because ICE has it targets a subset of people for bond revocation in retaliation for their speech. That is not and cannot be the law. While it is true Mr. Baio has no absolute right to remain free on the bond that IJ set in his case, he does have the First Amendment right not to be singled out by ICE for bond revocation based on his speech. We respectfully ask the court to reverse the judgment below and restore Mr. Baio to the custody status he held prior to speaking out against ICE. Thank you, counsel. Thank you both for your arguments today. And I know we didn't get to a lot of issues, but your briefs are very good and we we've have absorbed them. So thanks again. The case just argued be submitted for decision.
judges: Schroeder, Thomas, Berzon